UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

MUNEERAH CRAWFORD,                    :
                                      :
                    Plaintiff,        :
                                      :          **MEMORANDUM & ORDER**
       -against-                      :
                                      :          **11-CV-3774 (ENV)**
ARNE DUNCAN, ET AL.,                  :
                                      :
                                      :
                    Defendants.       :

------------------------------------------------------------- x

VITALIANO, D.J.

        Plaintiff Muneerah Crawford brings this action *pro se* against defendants, Arne Duncan, in his capacity as United States Secretary of Education; the United States Department of Education (the "Department"); the United States of America; Citibank Student Loan Corporation ("CSLC");[1] and the California Student Aid Commission ("CSAC") for fraud and breach of contract.[2] On March 23, 2012, plaintiff filed a notice of voluntary dismissal of her claims against Duncan, the Department, and the United States. (Docket No. 43.)  Citibank N.A. ("Citibank"), wrongly sued as CSLC, now moves to dismiss the complaint for failure to state a claim.  For the reasons below, Citibank's motion is granted.

## Factual Background

        The following facts are drawn from the complaint as well as plaintiff's loan

---

[1] CSLC, named in error as a defendant in plaintiff's complaint, appears to refer to The Student Loan Corporation, an entity that Citibank, N.A. owned and sold to Discover Financial Services in December 2012.

[2] Educational Credit Management Corp. sought to intervene in the case, (Docket No. 35), but withdrew its request on February 17, 2012 upon determining that it was not the proper party in interest with respect to the loan in question, (Docket No. 41).

application and nine letters, which were "attached to the complaint as an exhibit or incorporated in it by reference" or "the terms and effect" of which plaintiff relied upon in drafting the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). All reasonable inferences are construed in plaintiff's favor. *See Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 591-92 (2d Cir. 2008).

Plaintiff consolidated several subsidized and unsubsidized loans with Citibank in mid-2005. (First Amended Complaint ("FAC") ¶¶ 1, 5; Pl.'s Br., Ex. 6 (Ltr., January 4, 2005).) After four and a half years of missteps and rocky communications, the loan went into default on December 27, 2005.[3] (FAC ¶ 3.)

1. <u>Loan Amount</u>

Plaintiff alleges that Citibank mishandled the loan from the start. (FAC ¶ 2.) Portions of her subsidized debt, which should not have incurred interest while she remained in school, were allocated, she says, to the unsubsidized portion of the loan and immediately began accruing interest. (FAC ¶¶ 5, 52.) Compounding the error, Citibank allegedly overpaid Direct Loan, the originator of a portion of the consolidated debt, during the consolidation process. (FAC ¶ 52; Pl.'s Br., Ex. 7A (Ltr., February 22, 2005).) Citibank ultimately received a refund from Direct Loan, but instead of applying the refund to the loan principal, as plaintiff contends it should have done, Citibank allegedly

---

[3] CSAC "certified and paid out the guarantor payment through Edfund . . . a non-profit agency to handle the guarantee on [p]laintiff's loan," (FAC ¶¶ 6, 38). "Plaintiff appealed their decision to default the loan." (FAC ¶ 38.) "The US *[sic]* Department of Education Default Resolution Services started to handle the defaulted loan in July 2009." (FAC ¶ 43.) Their *[sic]* paperwork reflected "the original mistakes on the loan balance," (FAC ¶ 50), but Crawford complains that Default Resolution Services declined to look into her loan. (FAC ¶¶ 43-51.) Crawford alleges extensive misconduct by CSAC, Edfund, and the federal government. This alleged misconduct is not relevant to the claim against Citibank and is not considered on this motion.

"capitalized" the refund amount onto the loan, increasing the balance.  (FAC ¶ 52.)

Crawford claims that she "discovered right away that Citibank had changed the loans into unsubsidized loans," and immediately notified the bank.  (FAC ¶ 20; Pl.'s Br., Ex. 6 (Ltr., January 4, 2005).)  Similarly, she advised Citibank of the "capitalization" issue "in writing and by numerous calls."  (FAC ¶ 52.)  Despite Crawford's efforts, Citibank did not correct the misallocation until August 2003; at least Citibank claims it did so then.  (Pl.'s Br., Ex. 7A (Ltr., February 22, 2005).)  Moreover, Crawford appears not to have been advised of the change until February 22, 2005.  *Id.*

Crawford alleges, and her correspondence with the bank bears out, that she "relied on statements made by the [d]efendants, who claims *[sic]* they had corrected serious mistakes they made on the loan contract."  (FAC ¶ 2; *compare* (Pl.'s Br., Exs. 6 (January 4, 2005), 7 (February 14, 2005) *and* Def.'s Br. Ex. 7 (January 7, 2006).)  However, "on December 15, 2012, [Citibank] again sent an incomplete financial record to plaintiff," (FAC ¶ 42), ostensibly in response to a request from plaintiff, and plaintiff "discovered that they had never corrected the loan balance," (FAC ¶ 23).

2.  <u>Loan Status and Plaintiff's Credit Rating</u>

In addition to inflating the amount of money owed, plaintiff alleges that Citibank wrongly caused the loan to go into immediate repayment.  (Pl.'s Br., Ex. 6 (Ltr., January 4, 2005).)  In fact, Crawford claims, the loan always should have been in forbearance or deferment.  (FAC ¶¶ 25, 52.)  Initially, plaintiff says she qualified for a student deferment.  (FAC ¶ 52.)  Thereafter, plaintiff claims she "was always eligible and entitled to have the loan deferred because the [d]efendants caused the [p]laintiff to be in a serious financial hardship."  (FAC ¶ 25.)  To this end, plaintiff would request, receive, and

submit deferment applications. (FAC ¶¶ 25, 27.) She claims she would then "call the [d]efendant to confirm they received it, and they would state the loan was in deferment," (FAC ¶ 25), and "in good standing," (FAC ¶ 5). Because Citibank "never once mailed confirmation of any deferment," (FAC ¶ 25), plaintiff "relied on [d]efendants *[sic]* past performance on the contract," (FAC ¶ 27; *see also* FAC ¶ 40), and verbal assurances, (FAC ¶ 5), and did not make loan payments (*see* FAC ¶ 25). Viewing the loan as delinquent, the bank reported plaintiff to the consumer rating agencies. (*See* Pl.'s Br., Ex. 7A (February 22, 2005), Ex. 8A (September 9, 2005).)

Citibank came to realize that the loan had been deferred and informed plaintiff by letter that "a correction had been issued to [the consumer rating agencies], showing the account status as current from 9/29/00 to 11/13/04."[4] *Id.* Plaintiff never received proof of the change, (FAC ¶ 42), and she contends that the corrections were not made. (FAC ¶¶ 5, 42, 57.) There is no disagreement about whether similar corrections were made for the remainder of the term of the loan. Citibank has never corrected these reports, claiming instead that "[t]he current information being reported to the credit bureau is accurate, as no payments have been made to your loan." (Pl.'s Br., Ex. 8A (September 9, 2005).)

Crawford admits that, even if the loan had not been deferred, she had no intention of paying it on account of another clerical mistake by Citibank. As she explained to the bank by letter dated July 28, 2005, "I do not intend to make pay *[sic]* one cent on this loan until you start following the original agreement which was repayment *[sic]* $60 per

---

[4] A subsequent letter from Citibank stated that the correction cleared "all previous delinquencies on your loan from 9/20/2000 through 11/13/2004." (Pl.'s Br., Ex. 8A (September 9, 2005).)

month for the first three years of the loan." (Pl.'s Br., Ex. 8 (July 28, 2005); *see also* Pl.'s Br., Exs. 6 (January 4, 2005), 7 (February 14, 2005).) Citibank requested documentation, (Pl.'s Br., Ex. 8A (September 9, 2005), and, apparently not having received it, nor having reached an agreement with plaintiff, defaulted the loan on December 27, 2005, (FAC ¶ 37.)

3. Harm

Plaintiff alleges that Citibank's actions destroyed her credit and caused her over ten years of unemployment (FAC ¶¶ 7, 56.) In particular, she claims she suffered "additional severe hardship" when her loan went into default (FAC ¶ 36.) She seeks $100,000 in lost wages as well as pain and suffering and punitive damages. (FAC, Prayer for Relief ¶ 3.) Construing the complaint to include the requests for relief in plaintiff's correspondence with Citibank, Crawford also seeks (1) restoration of the loan, pursuant to a new agreement limiting payment for the first three years to $60 per month; (2) correction of her credit report; and (3) a written admission that mistakes were made with regard to the amount of the loan. (Pl.'s Br., Ex. 8 (July 28, 2005).)

### Standard of Review

To survive dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (U.S. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Plaintiffs must provide more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

A court must presume the truth of all factual allegations in the complaint for

5

purposes of Rule 12(b)(6) but is not bound to accept the truth of legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944 (1986). Indeed, it is the factual allegations that are paramount, as "a complaint need not pin plaintiff's claim for relief to a precise legal theory," nor does it need to provide "an exposition of his legal argument." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011). In analyzing well-pleaded facts, a court will draw all reasonable inferences in favor of the plaintiff. *See Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 591-92 (2d Cir. 2007). Moreover, because plaintiff here proceeds *pro se*, her complaint must be read liberally and interpreted as raising the strongest arguments it suggests. *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the Court must grant leave to amend it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

<u>Discussion</u>

Plaintiff's complaint gives rise to four potential causes of action. As pled, plaintiff's fraud, Fair Credit Reporting Act ("FCRA") and Higher Education Act claims do not meet the requisite pleading standards. Her breach of contract claim does. However, it too fails, at least temporarily, on jurisdictional grounds. As the complaint gives some "indication [that] a valid claim might be stated" with respect to the fraud and FCRA causes of action, leave will be granted to amend the complaint. *See Cuoco v. Moritsugu*, at 112. These conclusions are reached upon the analysis that follows.

1.   <u>Fair Credit Reporting Act</u>

Although Crawford does not mention the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2, by name, as Citibank notes in its memorandum of law, she

states facts that suggest she may be attempting to bring a claim under that statute. FCRA, which regulates credit reporting procedures, codifies a consumer's right to dispute information reported to a credit agency by a furnisher of credit information. 15 U.S.C. §§ 1681g(c)(1)(B)(iii), 1681i(a)(1)(A), 1681s-2(a)(8). Filing a dispute triggers a duty on the part of the furnisher to "reasonably investigate and verify that the information is accurate." *Longman v. Wachovia Bank, N.A.*, 2012 WL 6604538 at *2; *see also* 15 U.S.C. § 1681s-2(b).

Notice to a furnisher by a credit reporting agency of a consumer dispute creates a private right of action under 15 U.S.C. § 1681s-2(b). *Shieh v. Flushing Branch, Chase Bank USA, N.A.*, 2012 WL 2678932 at *7. In other words, if Crawford "contacted a consumer reporting agency prior to the commencement of the present action, [and] such an agency notified [the bank] of the dispute," then plaintiff is properly positioned to bring a claim under § 1681s-2(b). *Id.* To prevail, plaintiff also would have to demonstrate that Citibank failed to: (1) investigate the disputed information, (2) review all relevant information provided by the credit reporting agency (with which plaintiff raised the dispute), (3) inform the credit reporting agency of the results of the investigation, and (4) report any corrections to all other credit reporting agencies. *Fashakin v. Nextel Communications*, 2006 WL 1875341 at *5 (E.D.N.Y. 2006).

As pled, however, the complaint does not make a sufficient showing of standing, because plaintiff does not allege that she contacted a consumer rating agency or that the agency in turn notified Citibank of the dispute. Consequently, Crawford fails to state a claim under FCRA. Plaintiff states in her opposition papers that she "did dispute the credit report information but was not successful in getting the original information

deleted until her credit report was updates *[sic]* showing her in default."[5]  (Pl.'s Br. at 26.)
The object of her dispute is not clear, but to the extent she raised her concerns with a
consumer rating agency, plaintiff may be able to amend her complaint to properly state a
claim.[6]  She is granted leave to do so.

## 2. Higher Education Act of 1965

Plaintiff claims that Citibank violated the Higher Education Act of 1965
("HEA"), 15 U.S.C. § 1000, *inter alia*, stating that the statute prohibited the bank from
"add[ing] interest that accrued but is not paid when due to the unpaid balance of this
loan." (FAC ¶ 52.)  Although this conduct may support a separate finding of wrongdoing,
"[i]t is well settled that the HEA does not give student borrowers a private right of action
against a private actor to enforce its provisions in federal court." *Sanon v. Dep't of Higher
Ed.*, 2010 WL 1049264, at *8 (E.D.N.Y. 2010).  Therefore, plaintiff cannot state a claim
under the HEA, and, if she purported to do so, it is dismissed.

## 3. Breach of Contract

Plaintiff claims that Citibank violated in four key ways the bargain secured
by the promissory note, which, in conjunction with a disclosure statement, controls the
parties' relationship.[7]  Citibank deals with the first three alleged violations in its moving

---

[5] Since Crawford's brief does not have page numbers, the citations that are used in this
Memorandum and Order make use of the page numbers assigned to the document by the
Electronic Filing stamp on the header of each page.
[6] Citibank also contested the timeliness of this claim. (Def.'s Br. at 13-14.)  To state such a
claim in a timely fashion, the actionable conduct must have occurred within "the earlier of
(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for
such liability; or (2) 5 years after the date on which the violation that is the basis for such
liability occurs." 15 U.S.C. § 1681p; *see also Shieh v. Flushing Branch, Chase Bank USA,
N.A.*, 2012 WL 2678932 at *6.
[7] The promissory note, a copy of which has been filed, was incorporated by reference in the
complaint. (*See*, FAC ¶ 1; Pl.'s Br., Ex. 11.)  However, the disclosure statement has not

8

papers (Def.'s Br. at 9-10); they are (1) misrepresenting the amount of the loan by converting portions of plaintiff's subsidized loans to unsubsidized debt, (FAC ¶ 5), and improperly "capitalizing" interest on the loan, (FAC ¶ 52); (2) reporting misinformation to the consumer rating agencies, (FAC ¶ 21.); and (3) wrongfully defaulting the loan, (FAC ¶¶ 4, 25, 27). The additional violation alleged by plaintiff is that Citibank unilaterally changed the amount of her monthly payment. (*E.g.*, Pl.'s Br., Ex. 7 (February 14, 2005).)

Citibank advances two theories of defense. First, it argues that the statute of limitations has expired under New York law. (Def.'s Br. at 8-10.) Second, Citibank contends that plaintiff fails to state a claim because she does not plead cognizable damages. (Def.'s Br. at 15-18.)

Under New York law, a contract claim is barred six years from the date of the breach, irrespective of whether the plaintiff is aware that the contract has been breached. CPLR § 213(2); *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007). As plaintiff filed her complaint on August 30, 2011, any cause of action arising out of a breach occurring after August 30, 2005 is timely. At least two of the four alleged breaches occurred within this window: Citibank defaulted the loan on December 27, 2005,[8] (FAC ¶ 27), and appears to have provided information to the consumer rating agencies regarding the default and/or overdue loan payments throughout the Fall of 2005, (*see* FAC ¶ 22, 36).

---

been filed and, other than its alleged existence, cannot be further considered on this motion.

[8] Citibank urges the Court to reject a contract claim based on the default as it resulted from plaintiff's delinquency. (Def.'s Br. at 10.) However, plaintiff claims that a series of hardship deferments entitled her to withhold payment and that Citibank wrongfully defaulted the loan. (FAC ¶ 5.) For the purposes of this motion, the Court must "take as true all well-pled facts alleged in the complaints." *Koppel v. 4987 Corp.*, 167 F.3d 125, 127 (2d Cir. 1999). Therefore, Citibank's argument is without effect at this stage of the litigation.

Therefore, any contract action predicated upon such alleged events would fall within the statute of limitations.

Plaintiff also satisfies the pleading requirement that a cognizable prayer for relief be demanded. *See Diesel Props S.r.l. v. Greystone Business Credit II LLC*, 631 F.3d 42, 52 -53 (2d Cir. 2011). "Where a party breaches a contract, that party is liable to the non-breaching party for damages and the amount of damages must put the non-breaching party in as good a position as if the breach had not occurred." *Boyce v. Soundview Technology Group, Inc.*, 464 F.3d 376, 391 (2d Cir. 2006). This principle "appl[ies] not only to contract actions seeking solely money damages, but also to actions in equity seeking specific performance of contracts." *Versatile Housewares & Gardening Systems, Inc. v. Thill Logistics, Inc.*, 819 F. Supp. 2d 230, 239 (S.D.N.Y. 2011). Here, Crawford's letter to the bank states plainly the steps that Citibank would need to take to restore her to the position she would have been in had the bank performed under the contract. (*See* Pl.'s Br., Ex. 8 (July 28, 2005).) The pleadings, therefore, do not suffer the fatal shortcoming that Citibank contends; Crawford properly states a claim for breach of contract.

While plaintiff's breach of contract claim withstands the dismissal motion on this score, the Court notes that Citibank rightly argues that plaintiff does not plead facts sufficient to support all of the damages enumerated in the complaint. First, the pleadings do not warrant an award of $100,000 in "loss of wages and loss of employment in the Entertainment Industry for the past eleven years." (FAC, Prayer for Relief ¶ 3.) Even bolstered by plaintiff's explanation that she derived the loss amount by "calculate[ing] the lowest amount of wages per year that the [p]laintiff received while employed in the Entertainment Industry, by adding the total compensation received and dividing it by the

10

total years employed," *id.*, the claim is too speculative.

> Under well-settled New York law, a plaintiff who proves a breach of contract may recover lost profits . . . only by showing: (1) that the damages were caused by the defendant's breach; (2) that the lost-profit damages are capable of proof with reasonable certainty; and (3) that such damages were fairly within the contemplation of the parties to the contract at the time it was made. The profits claimed to have been lost by reason of the defendant's breach may not be speculative, possible, imaginary, remote, or the result of other intervening causes.

*Spherenomics Global Contact Centers v. Customer Corp.*, 427 F.Supp.2d 236, 251 (E.D.N.Y. 2006)(quotations omitted). The future employment pursuits of a student loan borrower are totally unhinged from the contemplation of such contracting parties. Assuming there was even an inkling of contemplation, there is no reasonable certainty that plaintiff would have continued in that field or continued to earn the same wage. *See Kingsley v. BMW of North America, LLC*, 2012 WL 3903466 (E.D.N.Y. 2012). This prayer for relief is dismissed.

Similarly, damages for pain and suffering and punitive damages are not recoverable in this action. Under New York law "mental distress /emotional damages. . . are not available for a breach of contract claim." *Trikas v. Universal Card Services Corp.*, 351 F.Supp.2d 37, 46 (E.D.N.Y. 2005). Nor are punitive damages recoverable for a breach of contract "unless the conduct constituting the breach is also a tort for which punitive damages are recoverable." *Markel American Ins. Co. v. Linhart*, 2012 WL 2930207 at *2 (E.D.N.Y. 2012). Nothing in the comprehensive pleadings suggests repleading on this point would be anything but futile. These prayers for relief are dismissed as well.

While the balance of plaintiff's breach of contract claim would otherwise survive, it must be dismissed on jurisdictional grounds. Absent a federal claim to serve as a jurisdictional anchor, and without damages exceeding the jurisdictional minimum of

11

$75,000, the state law claim is not properly before a federal court. Should plaintiff choose to amend her complaint, she must either plead cognizable damages of at least $75,000, or, alternatively, state a claim under FCRA. Otherwise, the Court will continue to lack a jurisdictional basis to maintain the contract claim, which will be dismissed.

4. Fraud

Fraud has a different and higher pleading bar. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To satisfy the pleading standard set forth in Rule 9(b), a complaint must "demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001). Moreover, an action must commence within the greater of six years from the date of the misrepresentation that forms the basis of the fraud, or within two years of the date the plaintiff discovered the fraud. N.Y. CPLR § 213(8). As plaintiff filed her complaint on August 30, 2011, a timely misrepresentation would have had to have been made after August 30, 2005 or discovered after August 30, 2009.[9]

Citibank argues that plaintiff cannot state a claim for fraud because any alleged misstatements would fall outside of the statute of limitations, and, if any such claim were not time barred, it would fail because plaintiff pleaded facts demonstrating that she

_____

[9] Plaintiff first pled fraud in an amended complaint dated December 16, 2011. The claims relates back to the filing of the original complaint as "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

12

did not rely on the bank's statements. (Def.'s Br. at 10-15.)

Far from a model of clarity, plaintiff's complaint makes reference to two categories of statements that could, with additional detail, form the basis of a timely fraud claim.[10] First, Crawford alleges that bank employees verbally told her "over the entire life of the loan that the loan was in deferment," (FAC ¶¶ 24, 54), when in fact payments became due on November 13, 2004, (Pl.'s Br., Ex. 7A (February 22, 2005)). As the loan did not go into default until December 27, 2005, any such statement made between August 30, 2005 and the end of the loan falls within the limitations period. Second, Crawford contends first that she "justifiably relied on statements made by the [d]efendants, who claimed they corrected serious mistakes they made on the loan contract." (FAC ¶ 2.) Although the complaint does not specify when such statements were made, the incorporated exhibits demonstrate that, at a minimum, Citibank claimed to have corrected the loan balance in letters dated February 22, 2005 and September 9, 2005. (Pl.'s Br., Exs. 7A (February 22, 2005), 8A (September 9, 2005).) Both statements fall within the statute of limitations: the September 9 communication occurred within six years of filing, and plaintiff says she did not discover the falsehood until December 15, 2012, (FAC ¶ 23), which falls within the two-year discovery rule.

---

[10] The amended complaint also implies that Citibank made material misstatements about correcting plaintiff's loan. (FAC ¶¶ 5, 54, 57.) These statements cannot form the basis of a fraud claim under New York law. The Fair Credit Reporting Act—to the exclusion of state law—controls the duties of parties furnishing information to credit agencies. *Shieh v. Flushing Branch, Chase Bank USA*, 2012 WL 2678932 at *4 (S.D.N.Y. 2012)(*citing Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 47-48 (2d Cir. 2011). Courts have extended this logic to preempt a plaintiff from bringing fraud claims predicated upon statements concerning the duties of furnishers of information to credit agencies. *See id.*, *Andresakis v. Capital One Bank, N.A.*, 2011 WL 1097413 (S.D.N.Y. 2011). As such, the alleged misstatements fall within the zone covered by the Fair Credit Reporting Act, and Citibank's alleged conduct cannot form the basis of a common law fraud.

13

Nothing in the record thus far substantiates defendants' argument that the fraud claim fails for lack of reliance. If anything, plaintiff's continued nonpayment of the loan evidences her reliance on statements about deferment. Similarly, the incidents cited by Citibank, (Def.'s Br. at 15), as evidence that plaintiff did not rely on statements made about corrections to her account lack the specificity needed to rebut Crawford's claim that she "justifiably relied on statements made by the [d]efendants, who claimed they corrected serious mistakes they made on the loan contract," (FAC ¶ 2). As the Court must presume the truth of all factual allegations in Crawford's pleadings, *Papasan v. Allain*, 478 U.S. at 265, and draw all reasonable inferences in favor of her at this stage of the proceedings, *Gorman v. Consolidated Edison Corp.*, 488 F.3d at 591-92, Citibank's argument cannot be sustained.

Notwithstanding, while plaintiff's complaint identifies plausible bases for a well-pleaded and timely fraud claim, even when viewed with the great solicitude extended to *pro se* plaintiffs, it fails to meet the heightened pleading standard set forth in Rule 9. That is, the pleadings do not provide sufficient specificity about Citibank's misstatements, nor does it demonstrate at all that Citibank knew such statements to be false when made. As such, plaintiff's fraud claim still must be dismissed, but with leave to replead if Crawford can, in good faith, supply such missing details.[11]

---

[11] The Court reiterates that plaintiff's prayer for monetary damages does not pass muster. *See Abernathy-Thomas Engineering Co. v. Pall Corp.*, 103 F.Supp.2d 582, 599 (E.D.N.Y. 2000)("It is well-settled under New York law that a fraud action cannot be maintained where the damages attributable to the fraud are speculative or undeterminable."). As with plaintiff's contract claim, even a well-pleaded fraud claim will be outside the Court's jurisdiction unless plaintiff's amended complaint prays for cognizable damages exceeding the jurisdictional minimum or, failing that, also properly states a claim under the Fair Credit Reporting Act. *See infra* Section 5.

14

5. Jurisdictional considerations

Even though leave to amend is liberally granted, the Court cautions that its jurisdiction will only be retained in one of two ways. Either plaintiff must, in good faith, bolster her prayer for relief with facts showing damages exceeding $75,000, 28 U.S.C. § 1332, or amend her complaint to properly state a claim under FCRA. If Crawford fails to do either, this entire case will be dismissed.

Conclusion

For all the forgoing reasons, Citibank's motion is granted to the extent that plaintiff's HEA claim is dismissed with prejudice. Plaintiff's prayers for $100,000 in lost wages, damages for pain and suffering, and punitive damages are similarly dismissed with prejudice. Plaintiff's breach of contract, fraud and FCRA claims are dismissed without prejudice, and plaintiff is granted 30 days leave from the entry of this order on the docket to file an amended complaint. The amended complaint may also state additional damages.

Any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. Coppedge v. United States, 369 U.S. 438, 444-45 (1962).


SO ORDERED.


Dated: Brooklyn, New York
      March 25, 2013


                                        s/ ENV

                                        _____
                                        ERIC N. VITALIANO
                                        United States District Judge